USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: October 23, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                                      :
JOY GARDNER,                                          :
                                                      :
                              Plaintiff,              :        14 Civ. 9414 (KPF)
                                                      :
               v.                                     :        OPINION AND ORDER
                                                      :
CREDIT MANAGEMENT LP,                                 :
                                                      :
                              Defendant.              :
                                                      :
------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

Plaintiff Joy Gardner received a debt collection letter from Defendant
Credit Management LP ("CMI") on or about September 2, 2014.  (Compl. ¶ 24).
Less than three months later, Gardner filed a class action lawsuit under the
Fair Debt Collection Practices Act (the "FDCPA" or the "Act"), 15 U.S.C.
§§ 1692-1692p, alleging that CMI had included "impermissible language or
symbols" on the envelope it mailed to Gardner, in violation of § 1692f(8).  CMI
has moved for judgment on the pleadings pursuant to Federal Rule of Civil
Procedure 12(c).  For the reasons set forth in this Opinion, CMI's motion is
granted in full.

## BACKGROUND[1]

On August 29, 2014, CMI caused a mass-produced debt collection notice
to be mailed to Gardner's home address.  (Compl. ¶¶ 24-25).  The envelope

---

[1]     The facts set forth herein are drawn from the Complaint (Dkt. #2), as well as the exhibit
to CMI's brief in support of the instant motion (Dkt #14), as it is fairly incorporated by
reference into the Complaint.

contained a glassine window, through which Gardner's name, address, and a string of 50 alphanumeric characters were visible.  (*Id.* at ¶ 25; Def. Ex. A). Contained within that string of characters was a nine-digit internal tracking number assigned to Gardner's account by CMI.  (Compl. ¶ 25; Def. Ex. A).  The envelope does not display CMI's name, nor does it give any indication of the subject of the correspondence, although it does provide a return address. (Compl. ¶ 25; Def. Ex. A).

Gardner filed her Complaint in the instant case on November 25, 2014, alleging that the display of her account's tracking number through the envelope window constituted a violation of the FDCPA.  (Dkt. #2).  Specifically, Gardner raises a claim under § 1692f(8) of that Act, which prohibits a debt collector from "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails."  15 U.S.C. § 1692f(8).

CMI filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on March 30, 2015.  (Dkt. #13).  Gardner filed her brief in opposition on April 30, 2015 (Dkt. #15, 16), and CMI filed a notice of supplemental authority on July 28, 2015 (Dkt. #22).

## DISCUSSION

### A.     Motions Under Federal Rule 12(c)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The standard applied to a motion for judgment on the pleadings is the same as that used for a motion to dismiss pursuant to Rule 12(b)(6).  *Sheppard* v. *Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *accord L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).  When considering either type of motion, a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).  A plaintiff is entitled to move forward with her case if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[W]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [Plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted)).

On a Rule 12(c) motion, the court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Roberts* v.

*Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009).  "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *Sira* v. *Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted) (quoting *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

## B.   Analysis

### 1.   The Text and Purpose of the FDCPA

Gardner raises her claim under § 1692f(8) of the FDCPA, which prohibits debt collectors from:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C. § 1692f(8).  Violations of the FDCPA are assessed using an objective, "least sophisticated consumer" standard, described as referring to someone who does "not hav[e] the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer[.]"  *Russell* v. *Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996); *accord Jacobson* v. *Healthcare Fin. Servs.*, 516 F.3d 85, 90 (2d Cir. 2008) (citing *Clomon* v. *Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)).

On its face, the language of § 1692f(8) would seem clearly to prohibit the inclusion of an internal tracking number visible from the exterior of an envelope, given that such a number constitutes some "language or symbol,

other than the debt collector's address."  However, a literal application of the
statute would similarly prohibit the inclusion of the recipient's name, her
address, or preprinted postage, which would — as several courts have
recognized — yield the absurd result that a statute governing the manner in
which the mails may be used for debt collection might in fact preclude the use
of the mails altogether.  *See Strand* v. *Diversified Collection Serv., Inc.*, 380 F.3d
316, 318 (8th Cir. 2004) (noting that a literal reading of § 1692f(8) produces the
"bizarre resul[t]" that "a debtor's address and an envelope's pre-printed postage
would arguably be prohibited"); *Schmid* v. *Transworld Sys., Inc.*, No. 15 C
02212 (EEC), 2015 WL 5181922, at *4 (N.D. Ill. Sept. 30, 2015) (collecting
cases); *see generally United States* v. *Dauray*, 215 F.3d 257, 264 (2d Cir. 2000)
("A statute should be interpreted in a way that avoids absurd results."); *Frank
G.* v. *Bd. of Educ. of Hyde Park*, 459 F.3d 356, 368 (2d Cir. 2006)
(acknowledging a "category of cases in which the result reached by applying the
plain language is sufficiently absurd to override its unambiguous terms," and
also that "where a statute is ambiguous, it should be interpreted in a way that
avoids absurd results" (internal quotation marks omitted)).

Both the Senate Committee Report that accompanied the passage of the
FDCPA and the application guidelines issued by the Federal Trade Commission
(the "FTC") provide reassurance that § 1692f(8) need not be applied so
narrowly.  The Senate Report sets forth the Act's purpose as "to protect
consumers from a host of unfair, harassing, and deceptive debt collection
practices without imposing unnecessary restrictions on ethical debt collectors."

5

S. Rep. No. 95-382, at 1 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696. The Report found that debt collection abuse by third-party debt collectors "takes many forms," including, as relevant to the instant motion, "disclosing a consumer's personal affairs to friends, neighbors, or an employer." *Id.* at 2. The Act's particular concern that information not be shared with "friends, neighbors, or an employer" suggests that the specific abuse to be remedied was that of collection agencies' targeted disclosures of a recipient's indebtedness as a means of harassment and embarrassment. To that end, the Act seeks to prevent the personally damaging consequences that could flow from being identified as a debtor to those close to the recipient.

Just as the Senate Committee's Report helps to contextualize § 1692f(8), the FTC's Commentary on the application of the FDCPA expressly advises against a narrow reading of the Act's wholesale ban on "any language or symbol" beyond those specifically allowed in the text. Rather, under the note heading "Harmless words or symbols," the FTC states that "[a] debt collector does not violate this section by using an envelope printed with words or notations that do not suggest the purpose of communication." 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988). Clearly, this indicates that the FTC contemplated a "harmless words or symbols" exception to the Act's all-encompassing ban; but it also provides further guidance for applying § 1692f(8), insofar as it elucidates which language or symbols are *not* "harmless" — those which "suggest the purpose of the communication." In

other words, the FTC's advisory document frames the "harm" that § 1692f(8) seeks to prevent as the disclosure of the recipient's status as a debtor.

### 2. Other Courts' Interpretations of the FDCPA and Application of the Act to the Present Facts

While the Second Circuit has not expressly recognized the so-called "benign language" exception to § 1692f(8), it has alluded to such an exception. *See Schweizer* v. *Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) (noting that "words like 'telegram'" on the outside of an envelope do not violate § 1692f(8) because such words "do not by themselves reveal that the content of a letter involves debt collection"). Additionally, multiple other courts have rejected a literal reading of the Act and found that § 1692f(8) does not bar harmless markings on the outside of an envelope. *See, e.g., Perez* v. *Global Credit and Collection Corp.*, No. 14 Civ. 9413 (CM), 2015 WL 4557064, at *3 (S.D.N.Y. July 27, 2015); *Gelinas* v. *Retrieval-Masters Creditors Bureau, Inc.*, No. 15 Civ. 116 (JTC), 2015 WL 4639949, at *3 (W.D.N.Y. July 22, 2015); *Gonzalez* v. *FMS, Inc.*, No. 14 Civ. 9424 (RC), 2015 WL 4100292, at *4-5 (N.D. Ill. July 6, 2015); *Lindbergh* v. *Transworld Sys., Inc.*, 846 F. Supp. 175, 180 (D. Conn. 1994) (stating that a "mechanical interpretation" of § 1692f(8) "finds no support in either the case law, the legislative history, or the governing administrative agency construction"); *Goswami* v. *Am. Collections Enterprise, Inc.*, 377 F.3d 488, 494 (5th Cir. 2004) (collecting cases). In light of the absurd results flowing from of a literal reading of the statute; the Act's purpose as reflected in the Senate Committee Report and the FTC Commentary; and the consensus (though not unanimity) developed amongst numerous other courts

that have considered the issue directly, the Court finds that a "benign language" exception applies to § 1692f(8).  The remaining question is whether an internal tracking number visible through a glassine window on the exterior of an envelope falls within this exception.  The Court finds that it does.

Two recent district court decisions within the Second Circuit have held that a tracking number visible through a glassine envelope window does not violate § 1692f(8), as the number falls within the "benign language" exception.  *See Perez*, 2015 WL 4557064, at *3; *Gelinas*, 2015 WL 4639949, at *3-4.  In so holding, the court in *Perez* noted that the history, stated purpose, and explicit agency interpretation of § 1692f(8) all indicate that its purpose is to prevent the exposure of a recipient's debtor status, and, further, that an unidentified string of apparently random numerals will not "convey to plaintiff's neighbors, friends or employer the fact that she owes anyone any money."  2015 WL 4557064, at *3.  The Court agrees with this analysis, and finds the facts in the present case to be nearly identical to those in *Perez*.

CMI sent Gardner an envelope that, through a glassine window, allowed one to see Gardner's name, her address, and a string of 50 alphanumeric characters, nine of which represented her internal CMI tracking number.  (Compl. ¶ 25; Def. Ex. A).  To a person unfamiliar with CMI's internal reference system, it is not even clear which numbers within the string constitute the tracking number at issue here.  The string of characters certainly does not convey to a casual or interested observer — and certainly not to the "least

sophisticated consumer" — that Gardner is in debt.  As Judge Milton I. Shadur

observed on analogous facts:

> In order for any hypothetical member of the public who
> views the envelope … to be able to perceive that debt
> collection is involved and is at issue, so that [defendant]
> assertedly used unfair and unconscionable means to
> collect a debt … that member of the public would have
> to be blessed (or cursed?) with x-ray vision that enabled
> him or her to read the letter contained in the sealed and
> assertedly offending envelope.  Absent that, any
> deciphering of the impenetrable string of numbers and
> symbols on the outside of the … envelope would have to
> depend on some sort of divination. That is simply not
> the stuff of which any legitimate invocation of the Act or
> its constructive purposes can be fashioned.

*Sampson* v. *MRS BPO*, No. 15 C 2258, 2015 WL 4613067, at *1 (N.D. Ill.

Mar. 17, 2015) (internal quotation marks and citations omitted).

Gardner cites to a decision from the United States Court of Appeals for

the Third Circuit, *Douglass* v. *Convergent Outsourcing*, 765 F.3d 299 (3d Cir.

2014), to argue that the appearance of a tracking number on the exterior of an

envelope violates § 1692f(8).[2]  That case involved an envelope that displayed,

through a glassine window, both an account number and a quick response

("QR") code that, when scanned with the appropriate equipment (such as a

smartphone with the requisite phone application), displayed the recipient's

name and the amount of her debt.  *Id.* at 300-01.  In addressing whether this

violated the FDCPA, the Third Circuit declined to discuss the existence *vel non*

of a benign language exception to § 1692f(8), finding instead that even if such

---

[2]     Gardner in fact cites only to the underlying District Court opinion, but the Court
considers the Circuit Court's opinion as setting forth the relevant analysis.

9

an exception existed, an internal account number falls outside of its scope.  *Id.*
at 303.  The Third Circuit premised its holding on the fact that "the account
number is not meaningless — it is a piece of information capable of identifying
[Plaintiff] as a debtor."  *Id.* at 306.

This Court is not bound by the Third Circuit's decision, and, to the
extent that the Third Circuit's conclusion pertained to a similar string of
random-seeming numbers comprising an internal account number, the Court
disagrees with the Third Circuit's analysis.  The internal tracking number at
issue in the present case does not appear in a format that would signify to
anyone outside of CMI that it pertains to a debt.  The number looks no different
from any of the other seemingly arbitrary assemblages of numbers appearing
on countless letters sent by banks, advertisers, and other corporate entities
each day.  On its face, the number betokens nothing.[3]

To the extent that the *Douglass* Court was concerned with an account
number's potential for disclosing the recipient's status as a debtor should a
third party choose to investigate the number's meaning, this concern seems
misplaced:  The return address printed on the envelope — text that is expressly
allowed by § 1692f(8) — is equally "capable of identifying [the recipient] as a
debtor."  In the case of CMI, all a sufficiently curious party needs to do is enter
the return address into an internet search engine, and the name and business
purpose of CMI appear, thereby disclosing that the letter's recipient has

---

[3]      Indeed, the *Douglass* Court's fixation on the "susceptibility" of the tracking number to
"privacy intrusions," 765 F.3d at 305, suggests that the Panel may have conflated the
FDCPA with other federal statutes specifically targeted at identity theft.

received a debt collection letter.  If the Act were concerned with the display of information that *could*, if diligently investigated, disclose a recipient's debtor status, it would not permit return addresses — or, arguably, use of the mails — at all.  Instead, however, the Act expressly allows not only return addresses, but also a collection agency's name, so long as, on its face, the name "does not indicate that [the sender] is in the debt collection business."  15 U.S.C. § 1692f(8).  Given that the internal tracking number at issue here in fact has less potential than the return address to disclose Gardner's debtor status (plugging the return address into a search engine reveals CMI's information, whereas plugging in the tracking number reveals nothing to connect the letter to debt collection),[4] the Court declines to follow the *Douglass* opinion insofar as it concluded that the display of a similar internal account number violates § 1692f(8).

Gardner additionally relies on *Voris* v. *Resurgent Capital Services, L.P.*, No. 06 Civ. 2253 (JM) (RBB), 494 F. Supp. 2d 1156 (S.D. Cal. June 26, 2007), to argue that the question of whether an account number constitutes "benign language" presents a factual issue that cannot be resolved on a motion to dismiss.  That case, however, involved an entirely different contention than the one at hand:  In *Voris*, the question was whether the words "You are Pre-Approved* See conditions Inside" were "unfair" or "unconscionable" because they tended to mislead a debtor into thinking that the collection letter was junk

---

[4]     Somewhat ironically, a Google search of the tracking number at issue now brings up the publicly-filed court documents pertaining to this lawsuit.

mail.  *Id.* at 1167.  The *Voris* court focused on the effect this language had on the letter's recipient and whether, as the result of such language, "the least sophisticated consumer would tend to throw away Defendant's letters without opening them."  *Id.*  Here, Gardner does not assert that the tracking number "misled" her into thinking that the letter was unsolicited junk mail.  She does not allege that the tracking number was misleading in any manner at all.  Thus the *Voris* court's holding, that extrinsic evidence was necessary to determine the language's effect on the recipient, is inapposite to the case at hand.

### CONCLUSION

A string of alphanumeric characters does not disclose anything about Gardner's private affairs, nor can Gardner plausibly assert that such characters would tend to mislead a debtor.  The Court agrees with the other courts within the Second Circuit that have considered whether a group of alphanumeric characters that includes within it an internal account number visible through a glassine window violates § 1692f(8), and holds similarly that it does not.  CMI's Motion to Dismiss is therefore GRANTED, and Gardner's Complaint is dismissed.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:  October 23, 2015
        New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge